UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| SUSAN MYERS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | 5:19-cv-311-JMH |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| RED CLASSIC TRANSIT, LLC, | ) | **AND ORDER** |
| COCA-COLA CONSOLIDATED and | ) | |
| WILLIAM STINSON, | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*

This matter is before the Court on the Defendants' Notice of Removal. [DE 1]. Myers requests the Court remand this case to the Fayette Circuit Court, arguing this Court does not have subject matter jurisdiction. [DE 9]. In particular, Myers alleges that Defendant, William Stinson ("Stinson"), is a Kentucky resident, like herself. As a result, she argues that the lack of complete diversity amongst the parties destroys diversity jurisdiction over the instant action. [Id].

The Defendants disagree. [DE 8]. They claim that Myers has no colorable cause of action against Stinson and Myers fraudulently joined Stinson solely to defeat diversity jurisdiction. [Id.]. Thus, the Defendants request the Court dismiss the claims against Stinson and retain jurisdiction. [Id.]. After careful consideration, the motion to remand is, and hereby shall be, **GRANTED**.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A. Factual Background**

On May 1, 2018, Plaintiff, Susan Myers ("Myers"), began working as a transport driver for Defendant, Red Classic Transit, LLC ("Red Classic"), in Lexington, Kentucky. [DE 1-1 at 2, PageID #10, ¶¶ 5-6]. Every day Myers reported to the Lexington facility to receive her orders for the day, and regularly transported freight for Red Classic to facilities in Cincinnati, Ohio. [Id. at 2, PageID #10, ¶¶ 6-7].

Myers was the only female transport driver at the Lexington office, [Id. at 2, PageID #10, ¶ 9], and was one of the only female drivers in the entire Red Classic organization. [Id. at 2, PageID #10, ¶ 10]. Myers never met any other female transport driver employed by Defendant, Coca Cola Consolidated, Inc. ("Coca Cola") [Id. at 2, PageID #10, ¶ 11].

While Myers drove trucks alone, she regularly interacted with other employees of Red Classic and Coca Cola, whom she understood to be her coworkers. [Id. at 2, PageID #10, ¶ 8]. Myers alleges that on numerous occasions, her male colleagues made offensive, uninvited, and unwanted verbal comments about her breasts, buttocks, and physical appearance. [Id. at 2-3, PageID #10-11, ¶¶ 12-13].

In September 2018, Myers alleged she was embarrassed by such an incident, and reported it the same day to her supervisor,

Defendant William Stinson ("Stinson") over the phone. [Id. at 3, PageID #11, ¶ 15]. Stinson allegedly laughed at Myers's report, failed to investigate the report, failed to report her allegations to anyone up the chain of command, and ultimately failed to take any steps to further address this behavior or to prevent similar, future behavior. [DE 1-1 at 3, PageID #11, ¶16].

The Lexington facility, where Myers regularly worked, had a single occupant, unisex restroom, which was equipped with both a toilet and a urinal. [Id. at 3, PageID #11, ¶ 17]. The restroom had a door lock as well. [Id.]. However, in December 2018, while Myers was using the restroom, a male employee kicked open the door and proceeded to urinate in the urinal in front Myers. [Id.]. She protested, but the male employee rebuffed her protests. [Id.].

Myers, once again, reported this embarrassing event to her supervisor, Stinson. [Id. at 3, PageID #11, ¶ 18]. However, Stinson allegedly, once again, failed to investigate, report, or otherwise address the December 2018 restroom incident. [Id. at 3-4, PageID #11-12, ¶¶ 19].

In addition to the September and December incidents, Myers further alleges that a Coca Cola dock worker verbally berated her on three (3) separate occasions. [Id. at 4, PageID #12, ¶ 20]. Myers believes she was singled out for this verbal hostility due to her sex. [Id.]. In any event, Myers reported all three of these upsetting and embarrassing incidents to Stinson. [Id. at 4,

PageID #12, ¶ 21]. She also reported the third event to her regional manager, Emily Goodman. [DE 1-1 at 4, PageID #12, ¶ 21]. Again, Myers alleges that Stinson and Goodman failed to investigate, report, or correct the behavior underlying these three incidents. [Id. at 4, PageID #12, ¶ 22].

Later, Stinson allegedly told Myers that the Defendants "were not happy" about the "HR situation," referencing the Myers's reports of sexual harassment and hostile work environment. [Id. at 4, PageID #12, ¶ 23]. Then, during the final two (2) weeks of Myers's employment, she was assigned fewer hours than normal. [Id. at 4, PageID #12, ¶ 24]. Myers alleges that this was retaliation for her reports of sexual harassment and hostile work environment. [Id.].

On January 17, 2019, Myers was called in to speak with Stinson and an HR employee of Coca Cola. [Id. at 4, PageID #12, ¶ 25; Id. at 5, PageID #13, ¶ 30]. There, Myers allegedly received a document notifying her that her employer was terminating her for falsification of time in violation of Defendants' code of conduct. [Id.]. In particular, she claims Defendants accused her of logging two (2) hours of delay time between 5:00 a.m. and 7:00 a.m. on July 14, 2019 due to ice, sleet, snow, fog, and traffic issues occurring on July 14, 2019.[1] [Id. at 4-5, PageID #12-13, ¶ 26].

---
[1] This date appears to be a typographical error. Plaintiff alleges she was terminated on January 17, 2019 and her Complaint was filed on July 2, 2019. However, as stated in her complaint, she claims she was fired due to an incident

4

Myers contends that she discontinued her use of the truck for those (2) two hours in the best interests of the Defendants, after having observed dangerous road conditions. [DE 1-1, PageID #5, ¶ 27]. Regardless, she was terminated from her employment.

**B. Procedural History**

On July 2, 2019, Myers filed this action in Fayette Circuit Court, naming Red Classic, Coca-Cola, and William Stinson as defendants. [DE 1-1 at 1-2, PageID #9-10]. In Count I, Myers alleges that Red Classic and Coca Cola failed to address her reports of sexual harassment and created a hostile work in violation KRS 344.040. [DE 1-1 at 5-6, PageID #13-14, ¶¶ 33-37]. In Count II, Myers alleges that she made Red Classic, Coca Cola, and Stinson aware that she suffered sexual harassment and a hostile work environment by reporting such incidents to her supervisors. [Id. at 6, PageID #14, ¶¶ 38-39]. As a result of her reports, Myers alleges that Red Classic, Coca Cola, and Stinson each retaliated against her by, among other things, terminating her employment on January 17, 2019, in violation of KRS 344.280. [Id. at 6-7, PageID #14-15, ¶¶ 40-41].

Myers contends that she suffered a derogation of her personal dignity, humiliation, embarrassment, and emotional distress as well as lost wages and benefits. [Id. at 6-7, PageID #14-15, ¶¶

---

occurring on July 14, 2019; a date falling well after she was terminated and, indeed, falling after the filing of her own Complaint.

5

36-37, 42-43]. For these reasons, Myers requests compensatory and punitive damages as well as costs and attorney fees. [Id. at 6-7, PageID #14-15].

Notably, Myers alleges that Red Classic and Coca-Cola are foreign, for-profit corporations conducting business in Kentucky, with principal places of business in Charlotte, North Carolina. [*Id*.]. Myers also alleges Stinson is a "resident of Fayette County, Kentucky..." [DE 1-1 at 2, PageID #10]. Myers is a resident of Jessamine County, Kentucky. [DE 1-1 at 1, PageID #9].

On August 6, 2019, the defendants removed this action to federal court, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. [DE 1]. In their Notice of Removal, the defendants claim that Myers fraudulently joined Stinson in order to defeat diversity jurisdiction. [DE 1 at 2, PageID #2]. As Stinson and Myers share citizenship in the Commonwealth of Kentucky, this Court ordered Defendants to show cause why the case should not be remanded. [DE 4].

On August 21, 2019, defendants responded to the Court's show cause Order, arguing that Stinson was fraudulently joined claiming that Myers has failed to plead any colorable cause of action against Stinson. [DE 4]. Accordingly, they argue that Myers claim against Stinson should be dismissed and that this Court should retain jurisdiction as the remaining, properly joined parties are of complete diversity of citizenship. [DE 4].

6

On September 5, 2019, Myers responded, arguing that she has a colorable cause of action against Stinson for retaliation under KRS 344.280. [DE 9]. Thus, she argues that her claim against him should not be dismissed. [Id.]. As a result, she contends that there is not complete diversity amongst the parties, and that removal was inappropriate. [Id.]. Accordingly, she states this Court should remand this action to the Fayette Circuit Court for lack of subject matter jurisdiction. [Id.]. The Defendants having responded to the Court's show cause Order, and Myers having replied, this matter is now ripe for review. We construe Defendant's response to the Show Cause order as a motion to dismiss Myers's claims against Stinson and Myer's response as a motion to remand.

## II. STANDARD OF REVIEW

A case filed in state court is removable only if it could have originally been brought in federal court. *See* 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction[] may be removed ... to the district court of the United States for the district and division embracing the place where such action is pending."); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 83, 126 S.Ct. 606, 163 L.Ed.2d 415 (2005) ("[Section] 1441 ... authorizes removal of civil actions from state court to federal court when the action initiated in state court is one that could have been

brought, originally, in federal district court."). Pursuant to 28 U.S.C. § 1332, federal district courts have original jurisdiction over civil actions between citizens of different states where the amount-in-controversy exceeds $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a).

The "statute has been interpreted to demand complete diversity, that is, that no party share citizenship with any opposing party." *Roche*, 546 U.S. at 89; *see also*, *Caudill v. N. Am. Media Corp.*, 200 F.3d 914, 916 (6th Cir. 2000). The burden of establishing diversity jurisdiction is on the removing party. *Coyne ex rel. Ohio v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).

When a non-diverse party has been joined as a defendant, "the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 432 (6th Cir. 2012) (quoting *Jerome-Duncan, Inc., v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999)). Fraudulent joinder is a "judicially created doctrine that provides an exception to the requirement of complete diversity." *Coyne*, 183 F.3d at 493. Thus, a removing party may remove a case to federal court if he or she can show that a non-diverse party was joined for the sole purpose of preventing removal.

To do so, the removing party must establish the plaintiff has "no colorable cause of action" against the non-diverse defendant.

*Saginaw Hous. Comm'n. v. Bannum, Inc.*, 576 F.3d 620, 626 (6th Cir. 2009). This is a "heavy burden." *Muriel-Don Coal, Inc. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590, 597 (E.D. Ky. 2011) (quoting *Mayes v. Rapoport*, 198 F.3d 457, 463 (4th Cir. 1999)). Thus, the focal question for the Court is "...whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994).

Moreover, Kentucky's less burdensome pleading standard applies in evaluating whether the Myers pleaded a "colorable" claim. *See In re Darvocet*, 889 F. Supp. 2d at 940 ("It makes little sense to measure the state-law viability of such claims, which were originally filed in state court, by federal pleading standards."). Although Kentucky courts have moved in the direction of adopting the more stringent federal pleading requirements, they still apply a "notice pleading" standard, where the "central purpose of pleadings remains notice of claims and defenses." *Pete v. Anderson*, 413 S.W.3d 291, 301 (Ky. 2013)(quoting *Hoke v. Cullinan*, 914 S.W.2d 335, 339 (Ky. 1995)); *see also Red Hed Oil, Inc., v. H.T. Hackney Co.*, 292 F.Supp.3d 764, 771 (E.D. Ky. 2017). In fact, Kentucky emphasizes "substance over form and discovery over pleadings." *V.S. v. Commonwealth, Cabinet for Human Res.*, 706 S.W.2d 420, 425-26 (Ky.Ct.App. 1986).

Thus, in the instant action, the Court must determine if Myers has a colorable cause of action against Stinson under Kentucky's notice pleading standard. *Jerome-Duncan*, 176 F.3d at 907; *see also*, *Coyne*, 183 F.3d at 493. If the claim is so frivolous that it has no hope of success, the Court presumes that the plaintiff made the claim for the sole purpose of preventing removal, and thus will retain jurisdiction. *Bannum, Inc.*, 576 F.3d at 626.

However, if there is even a "glimmer of hope," there is no fraudulent joinder. *Hartley v. CSX Transp. Inc.*, 187 F.3d 422, 426 (4th Cir. 1999). If so, the Court must remand this action for lack of subject matter jurisdiction because Stinson and Myers are unquestionably citizens of the Commonwealth. If not, the Court must dismiss Myers claim against Stinson and allow the matter to proceed before this Court. In deciding whether Stinson was fraudulently joined, the Court "must resolve all disputed questions of fact and ambiguities in the controlling ... state law in of the non-removing party."

### III. ANALYSIS

Defendants make two arguments in support of their contention that Stinson was fraudulently joined to defeat diversity. [DE 8]. First, they argue that Myers has no colorable cause of action against Stinson, asserting that Myers failed to state a discrimination claim against Stinson upon which relief can be granted. [Id. at 4-6, PageID #71-73]. In particular, Defendants

argue that Myers may only assert a claim for discrimination under KRS 344.040 against her employer, not her supervisor. [Id.]. Second, Defendants argue that Myers failed to state a retaliation claim against Stinson. [Id. at 6-12, PageID #73-78]. Here, Defendants argue that application of the intra-corporate conspiracy doctrine bars Myers's retaliation claim because she did not allege that Stinson was acting outside of his capacity as an agent of Red Classic and/or Coca Cola. [Id.]. We disagree and will address each argument in turn.

**A.**

Defendants first argue that Myers's complaint fails to state a discrimination claim against Stinson and, thus, argue that Stinson was fraudulently joined. [DE 8 at 4-6, PageID #71-73]. In particular, Defendants contend that because Stinson was Myers's individual supervisor, he is not a proper defendant to a discrimination claim for sexual harassment or hostile work environment under KRS 344.040. [Id.].

This argument simply misses the mark because Myers makes no such claim. It is true, as Defendants state, that discrimination claims under KRS 344.040 may only be brought against an employer. *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 793-94 (6th Cir. 2000). In fact, language of KRS 344.040(1) expressly provides: "(1) It is an unlawful practice for an *employer*:(a)...to discriminate against an individual...because of the

11

individual's...sex... ." (emphasis added). For purposes of KRS 344.040(1), an "employer" means "a person who has fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding year, and any agent for such person." See KRS 344.030(2). The Sixth Circuit has held that an individual employee/supervisor, who does not qualify as an employer, may not be held liable for discrimination under KRS Chapter 344. *Wathen v. General Elec. Co.*, 115 F.3d 400, 405-406 (6th Cir. 1997); *see also*, *Stacy v. Shoney's, Inc.*, 142 F.3d 436 at *2(6th Cir. 1998). Thus, Defendants argue that because Stinson was not Myers's employer for purposes of KRS 344.040, he cannot be liable for such acts.

However, it is clear from Myers's complaint that she makes no discrimination claim against Stinson. [DE 1-1 at 5-7]. Thus, this argument necessarily fails.

**B.**

Next, Defendants argue that Myers failed to state a colorable retaliation claim against Stinson. [Id. at 6-12, PageID #73-78]. In particular, they contend that application of the intra-corporate conspiracy doctrine bars Myers's retaliation claim.

Myers brings only one claim against Stinson. She alleges Stinson retaliated against her, in violation of KRS 344.280, by reducing her hours and ultimately terminating her employment. [DE

1-1 at 4-5, PageID #12-13, ¶¶ 24-25, 30]. The language of KRS 344.280 provides:

> It shall be unlawful practice for a person, or for two (2) or more person to conspire: (1) to retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this chapter.

Notably, courts have held that not only employers, but individuals like Stinson, can be held liable for retaliation under KCRA. *See Morris v. Oldham Cty. Fiscal Ct.*, 201 F.3d 784, 793-94 (6th Cir. 2000); *Brooks v. Lexington-Fayette Urban County Housing Authority*, 132 S.W.3d 790, 808 (Ky. 2004).

To make a *prima facie* case of retaliation under KRS 344.280, a plaintiff must show: "(1) [s]he engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against [her], and (4) there was a causal connection between the protected activity and the adverse employment action." *Roof v. Bel Brands USA, Inc.*, 641 Fed. App'x. 492 (6th Cir. 2016) (quoting *Hamilton v. Gen. Elect. Co.*, 556 F.3d 428, 435 (6th Cir. 2009); *see also*, *McBrearty v. Ky. Comty. & Texh. Coll. Sys.*, 262 S.W.3d 205, 212 (Ky. Ct. App. 2008).

Here, Myers has alleged facts to support such a cause of action under state law pleading standards. First, Myers asserts that colleagues made numerous offensive, uninvited, and unwanted sexual comments to her about her physical appearance, that she believed that she was being sexually harassed and subjected to a hostile work environment, and subsequently reported these incidents. [DE 1-1 at 2-4, 6 PageID #10-12, 14 ¶¶ 8, 12-13, 15-22, 38]. Second, Myers claims that she put her employer on notice by reporting these alleged incidents to her supervisor, Stinson, [Id. at 3, PageID #11, ¶ 18], and to her Regional Manager, Emily Goodman. [DE 1-1 at 4, PageID #12, ¶ 21]. Third, Myers alleges that she suffered an adverse employment action when her hours were reduced and she was ultimately terminated from her employment. [DE 1-1 at 4-5, PageID #12-13, ¶¶ 24-25, 30]. Finally, she claims that there was a causal connection between her reporting and the reduction in her hours and eventual termination. [DE 1-1 at 4-5, PageID #12-13, ¶¶ 24-25, 30]. In particular, she states that subsequent to her reporting these incidents, Stinson told her that Defendants were "not happy" about how the "HR situation" worked out, referencing her reports of sexual harassment and hostile work environment. [Id. at 4, PageID #12, ¶ 24]. As a result, we find that Myers has alleged a *prima facie* case of retaliation against Stinson. *Roof v. Bel Brands USA, Inc.*, 641 Fed. App'x. 492 (6th Cir. 2016).

Defendants argue that the intra-corporate conspiracy doctrine bars Myers's KCRA retaliation claim. [DE 8 at 6-11, PageID #73-78]. Under Kentucky law, the intra-corporate conspiracy doctrine states that "a corporation cannot conspire with its employees, and its employees, when acting within the scope of their employment, cannot conspire with its employees, when acting within the scope of their employment, cannot conspire amongst themselves." *Cowing v. Commare*, 499 S.W.3d 291, 294 (Ky. App. 2016). This is because "a corporation can only act through its agents[,]" and a conspiracy involves "two or more persons[.]" *Id.* (internal citations omitted).

Defendants rely primarily on *Cowing*, *McGee*, and *Dunn*, arguing that the intra-corporate conspiracy doctrine is applicable to Myers's retaliation claims. [DE 8 at 6-11, PageID #73-78]. In *McGee*, the plaintiff alleged her employer, Continental Mills, Inc. and two employees of Continental conspired to wrongfully terminate her in violation of KRS 342.197 and KRS 344.280. *McGee v. Continental Mills, Inc.*, Civ. Action No. 5:09-cv-155, 2009 WL 4825010, *1 (W.D. Ky. Dec. 11, 2009). The Western District of Kentucky held that the intra-corporate conspiracy doctrine barred the conspiracy claims because McGee did not "...argue or allege that [the employees] were acting outside of an agency capacity at any time." *Id.* at *2. Less than a year later, the *Dunn* court confronted a nearly identical claim. *Dunn v. Gordon Food Serv.'s,*

*Inc.*, Civ. Action No. 3:10-cv-355, 2010 WL 4180503, at *2 (W.D. Ky. Oct. 20, 2010). In *Dunn*, like *McGee*, the plaintiff brought a KRS 344.280 claim, alleging her direct supervisor conspired with her employer to violate KRS Chapter 344. *Id*. at *1. Due to the similarities in the claims, the Western District found "...no reason in departing from [the *McGee*] decision[,]" and held that the intra-corporate conspiracy doctrine barred Dunn's conspiracy claim.

The *Cowing* court was the first Kentucky court to address the application of the intra-corporate conspiracy doctrine in the context of claims brought under KRS 344.280. *Cowing v. Commare*, 499 S.W.3d 291 (Ky. App. 2016). In *Cowing*, the plaintiff claimed his managing agent "aided and abetted," his employer in its discriminatory practices in violation of KRS 344.280. *Cowing*, 499 S.W.3d at 292-93. The *Cowing* court reasoned that "[l]ike conspiracy, the act of aiding and abetting provides for secondary liability based on the conduct of a multiplicity of actors acting in concert." *Id*. at 295. As a result, the *Cowing* court held that the intra-corporate conspiracy doctrine applied, barring the plaintiff's aiding and abetting claim. *Id.*

The Defendants urge the Court to reach the same result here. [DE 8 at 6-11, PageID #73-78]. Defendants specifically argue that, like the plaintiff in *Cowing* and *McGee*, Myers failed to allege Stinson acted outside his capacity as an employee in retaliating

16

against her. [Id. at 7, PageID #74]. Defendants claim this omission is fatal to Myers's retaliation claim. [Id.]. In doing so, Defendants imply that that, like the "aiding and abetting" and "conspiracy" claims in *McGee*, *Dunn*, and *Cowing*, Myers's retaliation claim, too, should be barred by the intra-corporate conspiracy doctrine.

Not so. Retaliation claims are different from "aiding and abetting" and "conspiracy" claims. *See Cobble v. Yamamoto FB Engineering, Inc.*, Civ. Action No. 3:16-cv-566, 2017 WL 88992 (W.D. Ky. Jan. 9, 2017). As noted in *Cowing*, "conspiracy" and "aiding and abetting" claims are similar in that they "...provide[] for secondary liability based on the conduct of a multiplicity of actors acting in concert." *Cowing*, 499 S.W.3d at 295. When confronted with the very issue before this Court, the *Cobble* court noted that retaliation claims, on the other hand, do not require multiple actors acting in concert. *Cobble*, Civ. Action No. 3:16-cv-566, 2017 WL 88992, at *3. Instead, KRS 344.280 expressly forbids retaliation by "a person," plainly permitting the imposition of liability on individuals. *Id*. (citing *Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 794 (6th Cir. 2000). Accordingly, the *Cobble* court found that a retaliation claim brought against a supervisor under KRS 344.280 is not barred by the intra-corporate conspiracy doctrine. *Id*.

Here, Myers makes a virtually identical claim. She states that Stinson retaliated against her in violation of KRS 344.280. [DE 1-1]. As a result, like *Cobble*, we find that Myers's retaliation claim against Stinson is not barred by the intra-corporate conspiracy doctrine. Thus, we find "...there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994).

## IV. CONCLUSION

Myers and Stinson are both Kentucky residents. Because Myers has alleged a colorable retaliation claim against Stinson, he was not fraudulently joined. Thus, Defendants have failed to establish the complete diversity required removal, and remand is appropriate.

Accordingly, **IT IS ORDERED** as follows:

(1) That Defendants Red Classic Transit, LLC, Coca-Cola Consolidated, and William Stinson's motion, [DE 8], is, and hereby shall be **DENIED**;

(2) That Plaintiff's motion, [DE 9], is, and hereby shall be **GRANTED**;

(3) That this action **SHALL BE REMANDED** to the Fayette Circuit Court; and

(4) That this action **SHALL BE STRICKEN** from the active docket.

This the 18th day of November, 2019.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge